**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TERRIER, LLC; SUSAN BRUKETTA; AND HAROLD PASCOE;<br><br>         Plaintiffs,<br>     vs.<br><br>HCAFRANCHISE CORPORATION,<br><br>         Defendant. | Case No.: 2:22-cv-01325-GMN-EJY<br><br>**ORDER** |

Pending before the Court are the Emergency Motion for Temporary Restraining Order (ECF No. 2), and Preliminary Injunction, (ECF No. 8), filed by Plaintiffs Terrier, LLC; Susan Bruketta; and Harold Pascoe (collectively, "Plaintiffs"). Defendant HCAFranchise Corporation ("Defendant") filed a Response, (ECF No. 16), to which Plaintiffs filed a Reply, (ECF No. 19)

Also pending before the Court is Plaintiffs' Motion to Seal, (ECF No. 3). Defendant did not file a Response.

For the reasons set forth below, Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction are **DENIED** and Plaintiffs' Motion to Seal is **DENIED** without prejudice.

**I.     BACKGROUND**

This action arises from Defendant's alleged breach of a franchise agreement, in which Defendant agreed for Plaintiffs to operate their home care assistance business in New Mexico as a franchise of Defendants' nationwide franchise system for 65 years. (*See* Compl. ¶¶ 21–22, ECF No. 6). Plaintiffs allege the following information.

### A. THE FRANCHISE AGREEMENT

On December 27, 2006, Plaintiffs entered into a Franchise Agreement ("Agreement") with Defendant. (*Id.* ¶ 10). Under this Agreement, Defendant granted a non-exclusive right to operate a home care assistance franchise for fifteen years located within four counties in New Mexico. (*See* Agreement, Ex. A to Compl., ECF No. 6-1). The Agreement was structured for an initial term of 15 years (set to expire on December 27, 2021) and gave Plaintiffs the conditional right to renew their franchise for five successive periods of ten years. (*Id.*). Renewal was contingent on Plaintiffs executing:

> Franchisor's then-current standard form of Franchise Agreement, which may, at Franchisor's sole and absolute discretion, include substantially different terms than those contained in this Agreement, including but not limited to a higher royalty fee, a higher advertising contribution, a smaller Protected Territory, and the term of which shall be the renewal term and contain further renewal rights, if applicable, as specified in Section 3.2. herein.

(*Id.*).

The Agreement also contained a post-term covenant not to compete. (*Id.*). This provision prohibits Plaintiffs from competing with Defendant for two years and within twenty miles of the franchise business (or within twenty miles of another location of Defendant's business). (*Id.*). The Agreement entered into by parties acknowledged that the post-term covenant not to compete was "fair and reasonable in both duration and area, and will not impose any undue hardship on the Franchisee, since Franchisee has other considerable skills, experience, and education which afford Franchisee the opportunity to derive income from other endeavors." (*Id.*).

### B. THE RENEWAL DISPUTE

Pursuant to the Agreement, Plaintiffs began operating their home care business as individuals and continued for approximately thirteen years. (Compl. ¶ 13). In 2019, Plaintiffs formed Terrier to operate their business and transferred their contractual obligations under the

Agreement to Terrier in May 2019. (*Id. ¶¶* 13–15).  Under the Transfer Agreement, Plaintiffs agreed to remain bound by the Agreement's post-term covenant not to compete. (*See* Transfer Agreement, Ex. B to Compl., ECF No. 6-2).  Since the 2019 Transfer Agreement, Plaintiffs have invested over $500,000 in their business. (Compl. ¶ 18).

On May 21, 2021, Plaintiffs exercised their conditional right to renew the Agreement. (*Id.* ¶ 25).  Defendant, however, did not have a then-current standard form of the renewal agreement available, so on November 13, 2021, Defendant provided Plaintiffs with a demand agreement (the "Demand Agreement"). (*Id.* ¶¶ 27–32).  The Demand Agreement contains a compulsory sale provision, or purchase right, which grants Defendant the discretionary authority to purchase Plaintiffs' business at any time. (*Id.* ¶ 33); (Demand Agreement, Ex. C to Compl., ECF No. 6-3).  Plaintiffs refused to sign the Demand Agreement. (Compl. ¶ 41).

Defendant thereby informed Plaintiffs that under Section 4 of the Agreement, Plaintiffs had to execute and return the Demand Agreement within thirty days, or their franchise would expire. (*Id.* ¶ 40).  The parties, in an attempt to resolve this dispute, entered into nine separate extensions of the existing terms of the Agreement. (*Id.* ¶ 41).  The latest extension will expire on September 15, 2022. (*Id.*).  Plaintiffs contend that if they let the Agreement expire, Defendant will invoke the post-term covenant not to compete. (*Id*. ¶ 42).  Alternatively, if they sign the Demand Agreement, Defendant will invoke the purchase right provision. (*Id.* ¶ 43(b)).

On August 16, 2022, Plaintiffs filed the instant suit, alleging the following causes of action: (1) request for injunctive and equitable relief; (2) declaratory judgment concerning the post-term covenant not to compete; (3) declaratory judgment concerning the post-term covenant not to compete as applied; (4) a mandatory injunction concerning Section 4 of the Agreement; (5) breach of contract; and (6) breach of the implied covenant of good faith and fair dealing. (*Id*. ¶¶ 52–100).  Plaintiffs also filed an Emergency Motion for Temporary Restraining

Order, (ECF. No. 2), Motion for Seal, (ECF No. 3), and Motion for Preliminary Injunction, (ECF No. 8).[1]  The Court discusses the motions below.

## II. LEGAL STANDARD

The same legal standard applies to both temporary restraining orders and preliminary injunctions sought pursuant to Federal Rule of Civil Procedure 65. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis applied to temporary restraining orders and preliminary injunctions is "substantially identical"). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A court may grant such relief only upon a petitioner's showing of (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities weighs in petitioner's favor, and (4) an injunction is in the public interest. *Id.* at 20.  A temporary restraining order is distinguished by its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974); *see also* Fed. R. Civ. P. 65(b) (limiting temporary restraining orders to 14 days unless extended for good cause, and providing for expedited hearings on preliminary injunctions).

## III. DISCUSSION

### A. MOTION TO SEAL, (ECF No. 3)

Plaintiffs seek to seal their Complaint, Motion for Temporary Restraining Order and Preliminary Injunction, and accompanying exhibits because they contain confidential proprietary information relating to the "terms [] and negotiations" of past and current

---

[1] As a preliminary matter, Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction are identical. (*See generally* Mot. TRO, ECF No. 2); (Mot. Prelim. Inj., ECF No. 8).

Agreements in violation of a confidentiality agreement they signed with Defendant. (Mot. Seal 2:16–17, ECF No. 3). Under the compelling reasons standard, a party seeking to seal document(s) must demonstrate that the compelling reason(s) provided "outweigh[s] the competing interests of the public in having access to the judicial records and understanding the judicial process." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–89 (9th Cir. 2006). The Ninth Circuit has indicated that "'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.'" *Id*. at 1179 (citing *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978)). On the other hand, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id*. at 1179 (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)).

  Here, Plaintiffs have not explained compelling reasons for the Court to seal the Franchise Agreement, Transfer Agreement, and Demand Agreement. (Franchise Agreement, Ex. A to Compl., ECF No. 6-1); (Demand Agreement, Ex. B to Compl., ECF No. 6-2); (Transfer Agreement, Ex. C to Compl., ECF No. 6-3). Plaintiffs broadly explain that their "Complaint and Emergency Motion for Temporary Restraining Order identify confidential terms of negotiations relating to past and current Franchise Agreements." (Mot. Seal 2:16–17). However, "conclusory offerings do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents." *Kamakana*, 447 F.3d at 1182. Plaintiffs do not provide specific citations to where allegedly confidential terms are referenced in the briefs. Plaintiffs additionally have failed to address whether the underlying information contained in their documents could be redacted, and if so, which portions. *Linksmart Wireless Technology,*

*LLC v. Caesars Entertainment Corporation*, No. 2:18-cv-00862, 2020 WL 8834752, at 2 (D. Nev. Aug. 25, 2020) (denying plaintiff's motion to seal the entirety of its reply and exhibits when they did not demonstrate whether the information it seeks to keep confidential could be redacted); *Old Republic Insurance Company v. City Plan Development, Inc.*, No. 2:16-cv-00903, 2017 WL 5076516, at 2 (D. Nev. Nov. 2, 2017) (same). "[T]o the extent any confidential information can be easily redacted while leaving meaningful information available to the public, the Court must order that redacted versions be filed rather than sealing entire documents." *Linksmart Wireless Technology, LLC*, 2020 WL 8834752, at 2.  Accordingly, the Court denies without prejudice Plaintiffs' Motion to Seal.  If Plaintiffs want to re-file their Motion to Seal, they have until September 30, 2022, to file a renewed Motion to Seal. If Plaintiffs elect not to re-file their Motion to Seal, the Court will order the Clerk to unseal the documents.[2]

### B. MOTION FOR TEMPORARY RESTRAINING ORDER, (ECF No. 2); MOTION FOR PRELIMINARY INJUNCTION, (ECF No. 8)

The Court, having considered the Complaint, Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction, and accompanying exhibits, finds that Plaintiffs have not met the *Winter* factors and thus, the issuance of a temporary restraining and preliminary injunction are not appropriate.

#### 1. Likelihood of Success on the Merits

As a preliminary matter, Plaintiffs fail to specifically state which claims it seeks injunctive relief.  Plaintiffs broadly assert "two separate, though related, categories of claims that require declaratory and injunctive relief." (Mot. TRO 7:11–13, ECF No. 2); (Mot. Prelim. Inj. 7:11–13).  At its core, Plaintiffs seemingly seek injunctive and equitable relief from the purchase right in the Demand Agreement; declaratory judgment concerning the post-term

---

[2] The documents include Plaintiffs Complaint (ECF No. 6), Motion for Temporary Restraining Order (ECF No. 2), and Motion for Preliminary Injunction (ECF No. 8).

covenant not to compete; and declaratory judgment concerning the covenant not to compete as applied. (Mot. TRO 7:9–8:3); (Mot. Prelim. Inj. 7:9–8:3). However, injunctive and declaratory relief are remedies rather than independent causes of action. *See Anderson v. Deutsche Bank Nat'l Trust Co.*, No. 2:10-CV-1443, 2010 WL 4386958, at 5 (D. Nev. Oct. 29, 2010) ("Injunctive relief, declaratory relief, and recission are remedies and not causes of action."). Thus, Plaintiffs impermissibly seek injunctive relief on their claims for declaratory relief which contend that the non-compete is invalid facially and as applied. *See Thomas v. Wachovia Mortg., FSB*, No. 2:10-cv-01819, 2011 WL 3159169, at 7 (D. Nev. July 25, 2011) ("Injunctive and declaratory relief are remedies, as opposed to independent causes of action."). Plaintiffs, as petitioners for injunctive relief, carry the burden in demonstrating a likelihood of success on the merits. *See Winter*, 555 U.S. at 20 ("[A] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits." (emphasis added)). By not clearly articulating which claims they seek injunctive relief, Plaintiffs fail to meet that burden.

Nevertheless, even if the Court were to liberally construe Plaintiffs' claims concerning the invalidity of the non-compete agreement, Defendant's alleged breach of contract, and Defendant's alleged violation of the implied covenant of good faith and faith dealing,[3] the Court still finds that Plaintiffs fail to show a likelihood of success on the merits. The Court discusses each in turn.

### *a.     Defendant's Covenant Not to Compete*

Plaintiffs first argue that the post-term covenant not to compete is unenforceable both on its face and as applied. (Mot. TRO 7:13–22); (Mot. Prelim. Inj. 7:13–22). In response,

---

[3] Plaintiffs, in their argument concerning Defendant's alleged breach of contract, cursorily assert in three sentences that the terms added in the Demand Agreement also constitute a violation of the implied covenant of good faith and fair dealing. (Mot. TRO 20:5–8); (Mot. Prelim. Inj. 20:5–8). It is Plaintiffs burden to show a likelihood of success on the merits. *See Winter*, 555 U.S. at 20. Plaintiffs' general assertion that Defendant breached the implied covenant of good faith and fair dealing is insufficient to show a likelihood of success on the merits. Nevertheless, the Court will liberally construe the claim and examine the issue below.

Defendant argues that the covenant not to compete, while reasonable, does not present a justiciable controversy. (Resp. to TRO & Prelim. Inj. ("Resp.") 2:12–3:9, ECF No. 16).

Plaintiffs claim that Section 12 of the Agreement, which is a purported covenant not to compete clause, is invalid and unenforceable. (Mot. Prelim. Inj. 9:6–9); (Mot. TRO 9:6–9). Under Section 12 of the Agreement, Plaintiffs are prohibited from soliciting customers or engaging in a competing business with the Defendant for two years and within twenty miles of the franchise business (or within twenty miles of another location of Defendant's business). (*See generally* Agreement.). Section 12.3 of the Agreement states in relevant part that "Franchisee agrees that covenants not to compete set forth in this Agreement are fair and reasonable in both duration and area." (*Id.*).

### i.   Choice of Law

Before determining the reasonableness of the non-compete clause, the Court discusses which state law to apply. Though the parties agree that the Agreement is governed by Nevada law, "[t]he situs fixed by the agreement [. . .] must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum, or other interested state." *Progressive Gulf Ins. Co v. Faehnrich*, 327 P.3d 1061, 1064 (Nev. 2014). (internal citations omitted). Here, Plaintiffs business is in New Mexico. (*See* Agreement, Ex. A to Compl.). Because enforcement of the covenant not to compete will affect Plaintiffs business in New Mexico—the alleged interested state, the covenant not to compete must not contradict the public policy of New Mexico, even if the covenant not to compete is enforceable under Nevada law.

### ii.   Validity of Covenant Not to Compete

Section 12 is likely reasonable under both New Mexico and Nevada law. Under New Mexico law, "[i]t is well-settled that a restrictive covenant is valid if its within reasonable limits of time and space . . . ." *Bowen v. Carlsbad Ins. & Real Estate, Inc.*, 724 P.2d 223, 225 (N.M.

1986). Whether there is a "reasonable restraint depends on the facts of a particular case[.]" *Id.* "The core inquiry is whether the limitations imposed on an employee's future employment are no greater in duration, distance, and scope than is necessary to protect the legitimate business interests of the employer." *Southwest Preferred Financial, Inc. v. Bowermeister*, No. A-1-CA-37684, 2022 WL 1684582, at 3 (N.M. Ct. App. May 26, 2022) (unpublished). Here, the limitation appears necessary to protect Defendants' legitimate business interests and does not appear burdensome as to duration, distance, and scope. Section 12.2(b) indicates that the purpose of the post term covenant is to prevent Plaintiffs from operating a rival business near Defendant's franchise locations for two years. New Mexico courts have upheld non-compete covenants that last longer than the two years imposed by the Agreement. *See Resource Associates Grant Writing and Evaluation Services, LLC v. Maberry*, No. CIV-08-552, 2009 WL 1232133, at 10 (D. N.M. Apr. 23, 2009) (observing that New Mexico courts have upheld as reasonable covenants not to compete lasting three years); *Lovelace Clinic v. Murphy*, 417 P.2d 450, 453 (N.M. 1966) (upholding a contact provision which barred a physician from practicing medicine in a county for three years after the termination of his employment).

  The distance and scope of the non-compete clause also appears reasonable. In *Bowen v. Carlsbad Ins. & Real Estate, Inc.*, 724 P.2d 223 (N.M. 1986), the New Mexico Supreme Court found a non-compete agreement relating to the purchase of an insurance business was valid where it required the seller to attest that they would not compete for a period of fifteen years and within a radius of fifteen miles from the business. *Id.* at 517. The *Bowen* court noted that the restriction was reasonable considering the seller's unique knowledge about the customers and the community. *Id.* Likewise, Plaintiffs uniquely operate home care services in New Mexico. If Plaintiffs were permitted to open a business offering products or services like those offered by Defendant, they would target the same cliental as Defendant, regardless of whether

they used their specialized knowledge of Defendant's system in the operation of their business.[4] The restriction imposed by the Agreement is limited to preventing Plaintiffs from siphoning customers from Defendant's franchised territory. Curiously, Plaintiffs do not explain why they are unable to operate as an independent non-branded entity outside the twenty-mile radius imposed by the Agreement. Contrary to Plaintiffs contention, the plain language of the Agreement does not categorically prohibit Plaintiffs from operating a similar business using publicly available information and training methods. Therefore, Section 12 does not impose an undue hardship on Plaintiffs.

Similarly, the non-compete clause is likely reasonable under Nevada law. Under Nevada law, a covenant not to compete is enforceable if the terms are found to be reasonable. *See Shores v. Global Experience Specialists, Inc.*, 422 P.3d 1238, 1212 (Nev. 2018). Reasonable restrictions are those that are "reasonably necessary to protect the business and goodwill of the employer." *Jones v. Deeter*, 913 P.2d 1272, 1275 (Nev. 1996). Conversely, "[a] restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted." *Hansen v. Edwards*, 426 P.2d 792, 793 (Nev. 1967). The Supreme Court of Nevada has explained that post-employment covenants are examined under a higher degree of scrutiny because "of the seriousness of restricting an individual's ability to earn an income." *Shores*, 422 P.3d at 1241. Relevant factors in determining the reasonableness of the covenant include: (1) the duration of the restriction; (2) the geographical scope of the restriction; (3) and the hardship faced by the restricted party. *Id.* The "geographical scope of a restriction must be limited to areas where the

---

[4] It bears noting, however, that Plaintiffs have been franchisees of Defendant's system for years and actively participated in and benefited from its trainings. (Boehmer Decl. ¶ 51, Ex. 1 to Resp.., ECF No. 16-1). Like the sellers in *Bowen*, Plaintiffs have obtained a specialized knowledge of Defendant's customers, operation, and other proprietary information. (*Id.*).

employer has 'established contacts and good will.'" *Id.* (quoting *Camco, Inc. v. Baker*, 936 P.2d 829, 832 (Nev. 1997). However, "[t]here is no inflexible formula for deciding the ubiquitous question of reasonableness." *Id.* (quoting *Ellis v. McDaniel*, 596 P.2d 222, 224 (Nev. 1979).

For the same reasons as discussed above, Defendant's covenant not to compete is reasonable both in duration and geography. The Supreme Court of Nevada has upheld covenants not to compete limited to two years. *See Ellis*, 596 P.2d at 224 (upholding a non-compete provision that prohibited competition within two years after termination and within five miles from the employer's business). Moreover, a twenty-mile radius is far lower than those found to be unreasonable by the Supreme Court of Nevada. *See Golden Rd. Motor Inn, Inc.*, 376 P.3d at 155 (invaliding a 150-mile radius); *Camco, Inc.*, 936 P.2d at 832 (invalidating a fifty-mile radius). Because the covenant not to compete is likely reasonable under both New Mexico and Nevada law, the Court finds that Plaintiffs are unable to demonstrate a likelihood of success that the covenant not to compete is invalid as a matter of law.

### b. *Breach of Contract*

Plaintiffs argue that Defendant breached the Agreement by including substantially and materially different terms in the renewal contract. (Mot. TRO 7:23–8:3); (Mot. Prelim. Inj. 7:23–8:3). In response, Defendant asserts that the express terms of the Agreement allow the Franchisor, "at [its] sole and absolute discretion, include substantially different terms than those contained in [the original Agreement]." (Resp. 11:5–15).[5] Under Nevada law, an actionable

---

[5] Plaintiffs additionally assert that Defendant breached the Agreement by not providing its then-current standard form of Agreement when Plaintiffs exercised their right of renewal. (Mot. TRO 2:8–20); (Mot. Prelim. Inj. 2:8–20). The facts show that Defendant was unable to provide Plaintiffs with their most recent Agreement when Plaintiffs renewed due to a third-party audit being conducted to update their form. (*See* Boehmer Decl. ¶¶ 37–39, Resp.). Soon after the audit was completed, Defendant provided Plaintiffs with its most recent version of the Agreement in September 2021 which has contained a purchase right provision since 2011. (*Id.*). Moreover, the Court does not agree with Plaintiffs' characterization of the Agreement as providing a franchise for a 65-year term. (Mot. TRO ¶¶ 6, 10); (Mot. Prelim. Inj. 12:7–12). To do so would defeat the purpose of the renewal provisions found in section 4.1 of the Agreement. *See Nevada State Education Association v. Clark County Education Association*, 482 P.3d. 665, 673 (Nev. 2021) (noting that an interpretation of a contract "is not reasonable if it makes any contract provisions meaningless, or if it leads to an absurd result").

breach of contract requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 408 (1865)).

Section 4.2(b) of the Agreement provides that franchisees are required to execute a renewal agreement:

> which may, at Franchisor's sole and absolute discretion, include substantially different terms than those contained in [the original Agreement], including but not limited to a higher royalty fee, a higher advertising contribution, a smaller Protected Territory, and the term of which shall be the renewal term and contain further renewal rights, if applicable as specified in Section 3.2. herein.

(Agreement at 9).

Under the express terms of the Agreement, the parties agreed to Defendant potentially including substantially different terms during the renewal process. "[W]hen a contract is clear on its face, it 'will be construed from the written language and enforced as written." *Canfora v. Coast Hotels and Casinos, Inc.*, 121 P.3d 559, 603 (Nev. 2005) (citation omitted). Here, the express terms of the Agreement allowed Defendant "at [its] sole and absolute discretion, include substantially different terms than those contained in [the original Agreement]." (Agreement at 9). Because the Agreement is unambiguous, the Court "will construe and enforce it according to that language." *The Power Co. v. Henry*, 321 P.3d 858, 863 (Nev. 2014).

The Central District Court of California similarly upheld a provision in which the parties agreed to allow a franchisor to include any additional and material terms to the agreement. In *West L.A. Pizza, Inc. v. Domino's Pizza, Inc.*, No. 2:08-cv-07484, 2008 WL 11424181 (C.D. Cal. Feb. 26, 2008), the parties entered into a franchise agreement that included the following renewal provision:

> You [the franchisee] understand that the renewal franchise agreement may provide for higher royalty fees and greater expenditures for advertising and promotion than

> are provided for in this Agreement and *may contain other terms materially different from the terms* of this Agreement.

*Id.* (emphasis added).

There, the franchisees alleged several causes of action, including breach of contract for the imposition of unconscionable changes and other material changes to the renewal agreement. *Id.* Specifically, the franchisees alleged that because the franchise agreement stated that the "renewal franchise agreement may provide for higher royalty fees and greater expenditures for advertising and promotion[,]" the franchisor was prohibited from levying additional fees and charges upon renewal except as to the kinds listed. *Id.* at 8. The United States District Court for the Central District of California disagreed, finding that the terms of the franchise agreement "unambiguously contemplate[d] the possibility of other material changes to the franchisor/franchisee relationship, such as the imposition of the updated, uniform computer system ta issue here."[6] *Id.* Though the Central District of California's decision is not binding, the Court finds the decision, which deals with a similar provision in an almost identical situation, persuasive.[7]   For the foregoing reasons, the Court finds that Plaintiffs cannot demonstrate that Defendants likely breached their Agreement.[8]

---

[6] Plaintiffs argue that *West L.A. Pizza* is distinguishable from the instant action because the franchise agreement included the term material rather than substantial. (Reply Supp. TRO & Prelim. Inj. 4:15–26). However, for the reasons set forth above, the Court finds this argument unavailing. Rather, the Agreement expressly permits renewal on substantially different terms consistent with the then-current franchise agreement. (Agreement, Ex. A to Compl.)

[7] Plaintiffs additionally cite to *Pomerance v. Berkshire Life Ins. v. Co. of America*, 654 S.E.2d 638 (Ga. Ct. App. 2007), in which a state appellate court in Georgie interpreted the term "substantial." A non-Nevada state court decision is not binding on this Court, nor does the Court find this case relevant and persuasive given the express terms of the Agreement.

[8] Plaintiffs additionally contend in two sentences that Defendant's added terms, including the purchase right provision are unconscionable and void. (Mot. Prelim. Inj. 20:12–16). Plaintiffs, however, do not provide any substantive discussion of why the provision is unconscionable.

### *c. Implied Covenant of Good Faith and Fair Dealing*

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is not premised on Defendant's breach of contract, but rather is asserted in the alternative to breach of the express provisions of the parties' agreement and constitutes an independent cause of action. In Nevada, "an implied covenant of good faith and fair dealing exists in *all* contracts. *A.C. Shaw Const., Inc. v. Washoe Cnty.*, 784 P.2d 9, 10 (Nev. 1989) (emphasis in original). "Whether a party acted in good faith is a question of fact." *Martin v. Clark County*, No. 2:19-cv-01623, 2021 WL 6064423, at 4 (Dec. 22, 2021) (quoting *A.C. Shaw*, 784 P.2d at 11). A breach of the implied covenant is "limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *See Shaw v. CitiMortgage*, Inc., 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016) (interpreting Nevada law on contractual breach of implied covenants).

Plaintiffs briefly argue that Defendant's claim "that section 4.2(b) allows it to impose any terms upon Plaintiffs," including "but not limited to the provisions that would require Plaintiffs to sell their business to [Defendant] upon demand, under an imposed formula and procedure, is not dealing fairly or in good faith." (Mot. TRO 20:17–20); (Mot. Prelim. Inj. 20:17–20). "Where the terms of a contract are literally complied with but one party to the contract deliberatively contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis*, Prods., 808 P.2d 919, 922–23 (Nev. 1991). Here, Defendant's decision to condition renewal on the acceptance of new terms does not constitute bad faith. *See* 2 W. Garner, *Franchise and Distribution Law and Practice*, § 15:10, at 21 (1980) ("[T]he fact that a franchisor presents an agreement to its franchisees on a 'take it or leave it' basis does not show a lack of good faith."). In dismissing the franchisee's implied covenant cause of action, the U.S. District Court for the Central District of California in *West L.A. Pizza* found that because

the franchise agreement expressly permitted renewal on materially different terms consistent with the then-current renewal agreement, there was no violation of the implied covenant of good faith and fair dealing for exercising that provision. *See West L.A. Pizza, Inc.,* 2008 WL 11424181, at 9 (finding that franchisor did not violate the implied covenant where franchise agreement "expressly permit[ted] [franchisee's] renewal on materially different terms").

Accordingly, Plaintiffs have not shown a likelihood of success on the merits regarding their claims for breach of the implied covenant of good faith and fair dealing.[9]

### 2. Irreparable Harm

Plaintiffs argue that if a temporary restraining order and preliminary injunction are not issued, they will be forced to either accept Defendant's Demand Agreement and its purchase right provision or allow the current Agreement to expire and risk Defendant invoking the non-compete clause. (Mot. TRO 12:27–13:8); (Mot. Prelim. Inj. 12:27–13:8). Defendant, in response, argues that irreparable harm does not exist where the alleged harm results from enforcement of a contract's express terms. (Resp. 18:19–28). Additionally, Defendant asserts that Plaintiffs are unable to show irreparable harm because their injuries are self-inflicted. (*Id.*)

Irreparable harm cannot be "economic injury alone . . . because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Tele. & Appliance Rental, Inc.*, 944 F.2d 597, 602 (9th Cir. 1991). However, the Ninth Circuit has recognized certain "intangible injuries" which can constitute irreparable harm. *Id.* (indicating "advertising efforts and goodwill" as such injuries in a case regarding a non-compete clause of a contract). The Ninth Circuit has explained that "the loss of one's [business] does not carry merely monetary

---

[9] Additionally, Plaintiffs cursory mention of promissory estoppel is insufficient to demonstrate a likelihood of success on the merits. (Mot. TRO 20:28–21:9); (Mot. Prelim. Inj. 20:8–21:9). Plaintiffs' argument assumes that Defendant had an affirmative duty to inform them that they added the purchase right provision, or any provision for that matter, to the Agreement. (Mot. TRO 20:28–21:9); (Mot. Prelim. Inj. 20:28–21:9). To the contrary, when Plaintiffs entered the Agreement, they tacitly received constructive notice that new terms could be added which could impact the investments they made into their business. (*See* Agreement, Ex. A to Compl.).

consequences; it carries emotional damages and stress, which cannot be compensated by mere back payment of [losses]." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009) (internal citations omitted).

The Ninth Circuit has held that "self-inflicted wounds are not irreparable injury." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (quoting *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003)). An injury is self-inflicted if a party voluntarily chooses to violate the express terms of a contract they entered. *Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 845 (N.D. Cal. 2020) (finding that Epic Games' harm was "of its own making" when it chose to voluntarily breach the express terms of its contract with Apple). "[C]ourts generally decline to find irreparable harm that 'results from the express terms of [the] contract.'" *Epic Games, Inc.*, 493 F. Supp. 3d at 845 (quoting *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003).

Though Plaintiffs' alleged harm is likely intangible, the Court finds that Plaintiffs have not shown irreparable harm since any alleged harm was caused by the express terms of the Agreement. The original Agreement entered by Plaintiffs provided that their right to renew was contingent on executing a renewal agreement "which may, at Franchisor's sole and absolute discretion, include substantially different terms than those contained in this Agreement[.]" (Agreement at 9). The Agreement also contained the post-term covenant not to compete. (*Id.*) The Agreement's express language originally created the possibility that Defendant would add a term to its renewal agreement that Plaintiffs would disfavor. Any term that Plaintiffs disfavored would require them to sign the renewal document with the unfavorable term or allow the agreement to lapse. Plaintiffs are thus unable to claim irreparable harm from Defendant's exercise of the Agreement's express contractual provisions. *See Dotster, Inc. v. Internet Corp.*, 296 F. Supp. 2d, 1159, 1163–64 (C.D. Cal. 2003) (finding no

irreparable injury from the exercise of a contract provision).  Accordingly, the lack of irreparable injury weighs against Plaintiffs' requested relief.

### 3. Balance of the Equities

The equities must balance out in favor of the plaintiff in order to grant injunctive relief. *See Sony Computer Entertainment America, Inc. v. Bleem*, LLC, 214 F.3d 1022, 1025 (9th Cir. 2000).  Plaintiffs assert that the balance of equities weigh in their favor because without a ruling from this Court, they will be forced to sign the Demand Document or allow their current Agreement to expire and risk Defendant invoking the post-term covenant not to compete. (Mot. TRO 12:27–13:8); (Mot. Prelim. Inj. 12:27–13:8).   In response, Defendant asserts that the balance of hardship weighs in its favor because it will be forced "to continue performing under an agreement that expired under its terms in December 2021." (Resp. 18:12–15).  Because Plaintiffs do not have an unfettered right to renew the contract, Defendant argues that Plaintiffs' harm is conditional. (*Id.*)

Here, the equities tip in favor of Defendant.  The parties knowingly entered the Agreement in which Plaintiffs expressly agreed to Defendant including "substantially different term[s]" in the renewal agreement. (Agreement at 9.).  Though Plaintiffs are now faced with a difficult situation in choosing to renew an onerous agreement or dealing with the consequences of the non-compete clause, Plaintiffs implicitly agreed to such agreement by signing the Agreement.  The Court accordingly does not find the equities weigh in favor of Plaintiffs.

### 4. Public Interest

Lastly, Plaintiffs argue that the public interest weighs in their favor because failing to renew the Agreement will result in the loss of home care assistance for the elderly and disabled clients they serve in four counties in New Mexico. (Mot. TRO 22:26–23:7); (Mot. Prelim. Inj. 22:26–23:7).  In response, Defendant contends the public interest will be served by the enforcement of their valid contract. (Resp. 19:23–20:5).

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favor[s] in [granting or] denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009). However, "[w]hen an injunction will impact non-parties and has the potential to impact the public, the public interest is relevant." *Travelers Cas. And Sur. Co. of America v. Williams Bro., Inc.*, No 2:12-cv-0058, 2013 WL 5537191, at 12 (D. Nev. Oct. 4, 2013). Past decisions by this Court have recognized that there is a public interest in the enforcement of contracts and judgment. *See First 100, LLC v. Omni Financial, LLC*, No. 2:16-cv-00099, 2016 WL 3511252, at 3 (D. Nev. June 27, 2016) ("There is a public interest in the enforcement of contracts and judgments and in predictability in commercial transactions."); *Travelers Cas. And Sur. Co. of America v. Williams Bro., Inc.*, No 2:12-cv-0058, 2013 WL 5537191, at 12 (D. Nev. Oct. 4, 2013) ("There is a public interest in the enforcement of contracts and judgments.").

In weighing two competing interests—the loss of potential home care services and the importance of enforcing contracts, the Court finds that public interest weighs slightly in favor of Defendant. Plaintiffs properly note that failing to renew the Agreement will likely result in the loss of service to those "in need of in-home care and assistance, generally the elderly and infirm." (Mot. TRO 22:28–23:1). However, as explained above, Plaintiffs knowingly entered into the Agreement, which included an express provision that the franchisor, Defendant, could include additional terms to the agreement. Plaintiffs' decision not to renew, therefore, rests solely on them. Therefore, the Court finds that the public interest is best served through judicial restraint and denial of Plaintiffs' claims for injunctive relief. *See Goldberg v. Barreca*, No. 2:17-CV-2106, 2017 WL 3671292, at 8 (D. Nev. Aug. 24, 2017), *aff'd*, 720 F. App'x. 877 (9th Cir. 2018) (finding that the public interest is furthered by denying injunctive relief in a dispute involving unsettled questions of contract interpretation to which the plaintiffs have not

demonstrated a likelihood of success on the merits because the court otherwise "risks breaching the public interest by wrongfully interfering with" private contracts).

Considering the above factors, the Court finds that the *Winter* factors weigh against the issuance of a temporary restraining order and preliminary injunction. Plaintiffs have not demonstrated a likelihood of success on the merits, irreparable harm, a favorable balance of equities in its favor, and public interest.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order, (ECF No. 2), and Motion for Preliminary Injunction, (ECF No. 8), are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Seal (ECF No. 3), is **DENIED** without prejudice.

**DATED** this  15  day of September, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court